UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTY WATSON, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-01623-JRO-MJD |
| | ) |
| ALMA LASERS, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Dr. Christy Watson seeks indemnification from Alma Lasers, Inc. ("Alma") for liability Watson incurred related to training she provided in Arizona on the "BeautiFill" system, a cosmetic laser device manufactured and sold by Alma. Watson is an Indiana resident. Alma is a Delaware company headquartered in Illinois. Alma filed a motion to dismiss for lack of personal jurisdiction. Dkt. [15]. The Court now **GRANTS** the motion.

There is no general jurisdiction because Alma is not "at home" in Indiana. And there is no specific jurisdiction because Alma's contacts with Indiana are unrelated to the parties' present dispute or their contract for the training Watson performed in Arizona. Thus, Alma is not subject to the personal jurisdiction of Indiana.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Watson is, and at all relevant times was, a resident of Indiana.[1]  She owns and operates Body Bar M.D., which is located in Carmel, Indiana.  Dkt. 12 ¶ 1; Dkt. 18-1 ¶ 7.  Alma is incorporated under the laws of Delaware with its principal place of business in Illinois.  Dkt. ¶ 2.  Alma sells medical equipment, including the BeautiFill system, and contracts with physicians to train purchasers of the equipment.  *Id.* ¶ 3, 11.

Alma does some business in the Indiana market.  *Id.* ¶ 9.  It has sold products to a number of Indiana providers.  *Id.*  And Alma has hosted trainings in central Indiana, including a multi-day training in Indianapolis.  *Id.*

Alma recruited Watson to work as a physician training others on the use of Alma's products.  *Id.* ¶ 13.  Alma trained and certified Watson on how to provide training, but Watson does not say where this certification occurred.  *Id.*

Alma and Watson entered into a series of contracts for Watson to provide different trainings to other Alma customers.  *See id.* ¶ 14; *id.* ¶ 8 (alleging "part of the events and omissions giving rise to the contracts and related claims occurred in Indiana"); dkt. 18 at 6 (Alma "engaged in multiple contracts with [Watson]").  Watson had no ongoing duty to provide trainings but did so on an ad hoc basis in response to separate requests from Alma.  Dkt. 12 ¶ 14 ("Defendant would sell equipment, then contact Plaintiff and request that she offer training.").  These several contracts were oral, not written.  Dkt. 12 ¶¶ 13,

---

[1] The Court accepts all facts in Watson's amended complaint, dkt. 12, and declaration, dkt. 18-1, as true for the limited purpose of the motion to dismiss.

16.  The training process was managed and controlled by Alma.  *Id.* ¶ 17.  Watson often conducted trainings in her Indiana office at Alma's behest.  *Id.*

In 2020, Alma asked Watson to provide a training in Arizona.  *Id.* ¶ 23. Watson "would not have been in Arizona if not at [Alma's] request."  *Id.* ¶ 28.  In connection with this training, Watson "found herself in a lawsuit in Arizona."  *Id.* Watson tendered her defense to Alma, but it refused to defend her.  *Id.* ¶ 24. Alma promised to reimburse Watson when the case was resolved (the "indemnity contract").  *Id.*  Watson incurred $50,000 in settlement costs and $48,000 in legal fees while defending against the Arizona litigation.  *Id.* ¶¶ 25, 26.  Alma later told Watson it would "circle back" regarding reimbursement for the Arizona litigation.  Dkt. 18-1 ¶ 6.  When Alma did not render payment, Watson brought this suit for breach of contract and common law indemnification.  Dkt. 12.

Watson filed her original complaint in the Hamilton County Superior Court.  Dkt. 1-1.  Alma removed this case to federal court, dkt. 1, and promptly moved to dismiss for lack of personal jurisdiction, dkt. 4.  In response, Watson amended her complaint.  Dkt. 12.  Two weeks later, Alma renewed its motion to dismiss for lack of personal jurisdiction.  Dkt. 15.  The Court now considers Watson's second attempt to plead personal jurisdiction.

## II. RULE 12(b)(2) STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits motions to dismiss claims for lack of personal jurisdiction.  Here, the Court proceeds on the parties' submission of written materials, as neither party has requested an evidentiary hearing.  Accordingly, the plaintiff bears the burden of making only a prima facie

showing of the existence of jurisdiction.   *Purdue Rsch Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).   "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'"  *Id.* (quoting *Nelson ex rel. Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).   There are no factual disputes here, only disagreement on whether the jurisdictional facts support personal jurisdiction.

## III. DISCUSSION

Watson may proceed with her breach of contract and indemnification claims in this court if she can make a prima facie showing that Alma is either subject to Indiana's general jurisdiction, because Alma is "at home" here, or Indiana's personal jurisdiction, because Alma's contacts with Indiana "directly relate" to the parties' alleged indemnity contract.  Watson has not shown either. So, the case is dismissed without prejudice for lack of personal jurisdiction.

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction."  *Purdue Rsch. Found.*, 338 F.3d at 779.  Indiana's long-arm statute authorizes personal jurisdiction "on any basis not inconsistent with the Constitutions of this state or the United States."  Ind. T.R. 4.4(A).  Thus, "the statutory question merges with the constitutional one."  *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014).   In other words, if Indiana "constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so."  *Id.*

4

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). The canonical decision on modern personal jurisdiction is *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), in which the Supreme Court held that "in the context of our federal system of government," personal jurisdiction arises only if a defendant had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316–17 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The nature and extent of the defendant's relationship to the forum state may lead to two kinds of personal jurisdiction: general and specific. *Ford Motor Co.*, 592 U.S. at 358. Neither exists over Alma here.

## A.   No General Jurisdiction

General jurisdiction is "all-purpose" jurisdiction; it authorizes "any and all claims" against a defendant. *Id.* "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporation, general jurisdiction attaches in its place of incorporation and principal place of business. *See id.* at 358–59; *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023). Beyond these criteria, the test for general jurisdiction is "stringent" and "require[s] more than [a] substantial, continuous, and systematic course of business." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (cleaned up). A defendant's "corporate operations within a

state [must be] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings distinct from*" its corporate operations. *Id.* (emphasis in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014)).

Alma is a Delaware corporation with its principal place of business in Illinois. Dkt. 12 ¶ 2. Under the straightforward analysis of *Ford Motor Company*, Alma is subject to the general jurisdiction of Delaware and Illinois, not Indiana. *See* 592 U.S. at 358–59. In *Ford Motor Company*, Ford was not "at home" in Montana even though it had thirty-six dealerships there. *Id.* at 357. Here, Watson's amended complaint alleges a number of contacts that Alma has with Indiana, including "[g]enerally engaging in business in Indiana," dkt. 12 ¶ 9, and maintaining "a deliberate and significant presence in Indiana, with ongoing commercial relationships," *id.* ¶ 10. But, like Ford's many car dealerships in Montana in *Ford Motor Company*, Alma's general business dealings in Indiana in this case do not meet the stringent requirements for general jurisdiction. 592 U.S. at 358–59.

Watson has only this to say about Indiana's general jurisdiction over Alma:

> Alma tries to circumvent any general jurisdiction analysis by asserting the only thing that matters is the Arizona lawsuit. But that argument circumvents the facts and the claims. Watson seeks relief from Alma based on Alma's breach of its contractual and common-law indemnification obligation it owed to Watson, whom it dealt with while she was in Indiana.

Dkt. 18 at 7. But this argument focuses entirely on the fact that *she* was in Indiana when she dealt with Alma while omitting argument that Alma was "at

home" here.  This fails to make a prima facie case for general jurisdiction.  The Court concludes that Indiana lacks general jurisdiction over Alma.

## B.     No Specific Jurisdiction

Specific jurisdiction is "case-linked" jurisdiction; it authorizes "a narrower class of claims."  *Ford Motor Co.*, 592 U.S. at 358–59.  Specific jurisdiction turns on whether a plaintiff's injuries "arise out of or relate to" the defendant's forum-related activities.  *Tamburo v. Dworkin*, 601 F.3d 693, 708 (7th Cir. 2010).  "[T]he defendant's contacts with the forum state must 'directly relate to the challenged conduct or transaction,'" *N. Grain Mktg.*, 743 F.3d at 492 (quoting *Tamburo*, 601 F.3d at 702), and must show "that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there"—that is, "purposeful availment."  *Ford Motor Co.*, 592 U.S. at 359 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (alterations adopted).  The Seventh Circuit has distilled the caselaw into three requirements:

> First, the defendant must purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
>
> Second, there must be an adequate connection between the defendant's activities in the forum and the suit, such that the suit arises out of or relates to the forum contacts.
>
> Third, personal jurisdiction must accord with notions of fairness.

*Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815, 828 (7th Cir. 2025) (citing *B.D. ex rel. Myers v. Samsung Sdi Co.*, 143 F.4th 757, 765–66 (7th Cir. 2025)) (cleaned up).  This second requirement is dispositive here: there is not an adequate

connection between Alma's Indiana activities and the parties' substantive legal dispute.

**1.      This dispute is about a contract performed in Arizona.**

The Seventh Circuit has given plenty of guidance on how to analyze specific jurisdiction in cases arising out of a contract dispute.  As Alma points out, the Seventh Circuit has said "it is only the 'dealings *between the parties in regard to the disputed contract'* that are relevant to minimum contacts analysis." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir.1996)); *see* Dkt. 16 at 5.  Accordingly, for parties' prior dealings to be relevant to the present personal jurisdiction analysis, their "past contacts involving the forum state should either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract." *Id.*  The Seventh Circuit recognizes that a contract is usually "an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Ubiquity, Inc.*, 72 F.4th at 225 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479 (1985)).

The Seventh Circuit applied this analysis in *North Grain Marketing* to conclude Illinois had no specific jurisdiction over a Wisconsin defendant even when he contracted with an Illinois plaintiff.  In that case, the defendant (a Wisconsin farmer) travelled to Illinois to meet an agent of the plaintiff (an Illinois grain buyer). *N. Grain Mktg.*, 743 F.3d at 490–91.  Sometime after returning to

Wisconsin, the Wisconsin farmer contracted with the Illinois grain buyer to sell his grain. *Id.* at 491. When the Illinois buyer later sued for breach of contract in Illinois district court, the Seventh Circuit agreed it lacked jurisdiction. *Id.* at 496. The panel reasoned that "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Id.* at 493 (quoting *Purdue Rsch. Found.*, 338 F.3d at 781, which in turn cited *Burger King*, 471 U.S. at 478)). Instead, the court applied a "context-sensitive analysis," looking to the parties' "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.* (quoting *Purdue Rsch. Found.*, 338 F.3d at 781); *accord Ubiquity, Inc.*, 72 F.4th at 225. Relying on the fact that the defendant's obligations under the contract were a "series of discrete contracts" involving "discrete tasks" performed *outside* of the forum state, with "no 'continuing obligations,'" the court affirmed Illinois's lack of personal jurisdiction. *N. Grain Mktg.*, 743 F.3d at 495. The mere fact that the parties met in Illinois and that the Wisconsin farmer "recontracted with [the Illinois buyer] from time to time for about nine years," carried little weight. *Id.* at 495–96.

The facts Watson pleads here lead to the same outcome as *North Grain Marketing*. Defendant sold equipment to various purchasers but would "then contact Plaintiff" on an ad hoc basis and "request that she offer training" to those customers. Dkt. 12 ¶ 14. "Alma . . . contacted [Watson] in Indiana numerous times to conduct trainings around the country." Dkt. 18-1 ¶ 3. "There was no written contract or written procedure regarding the training," dkt. 12 ¶ 16, and

9

there is no allegation of any continuing contractual obligations that bound the parties. In other words, these dealings were not structured as one overarching agreement that the parties formally executed but as "multiple contracts with [Watson]." Dkt. 18 at 6 (citing dkt. 12 ¶ 9).

Thus, in 2020, Alma asked Watson to provide one such training in Arizona, and she "conducted that training as directed by Alma." Dkt. 12 ¶ 23. In connection with this training, Watson "found herself in a lawsuit in Arizona." *Id.* Alma promised to indemnify Watson once the case was resolved but ultimately refused to do so. *See id.* ¶ 24. Watson "would not have been in Arizona if not at [Alma's] request." *Id.* ¶ 28.

All of this shows that this lawsuit is only about the 2020 Arizona training and indemnity contract. While the amended complaint alleges Watson performed other trainings for Alma in Indiana, Watson is not enforcing any contracts or indemnification agreements related to those separate agreements—that is, those dealings do not "bear on the substantive legal dispute between the parties," *RAR, Inc.*, 107 F.3d at 1278, and are not "the real object of the business transaction" at issue here, *Ubiquity, Inc.*, 72 F.4th at 225. Moreover, like the contract in *North Grain Marketing*, the contract here is one of several discrete contracts that called for performance of discrete tasks outside of the forum state, with no continuing obligation. 743 F.3d at 495. If Watson were enforcing a different contract—one that dealt with equipment delivered to an Indiana customer who would be trained by Watson in Indiana, or some kind of master

10

services agreement with Alma of which the Arizona training was one of many work orders—the outcome could be different.  But that is not this case.

In sum, the allegations and jurisdictional facts before the Court do not establish a prima facie showing of the requisite minimum contacts between Alma and Indiana to establish specific personal jurisdiction over Alma.

### 2.   Watson's arguments for specific jurisdiction in Indiana over this case are unpersuasive.

Watson argues Indiana has specific jurisdiction over her indemnification claims for two reasons.  First, Alma purposefully availed itself of the privilege of conducting business in Indiana.  Dkt. 18 at 5 (citing *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012)).  Second, she was in Indiana when Alma recruited, communicated with, and paid her.  Dkt. 18 at 5 (citing dkt. 12 ¶ 5).  Neither of these arguments carry the day.

In her amended complaint, Watson points to a number of Alma's contacts with Indiana to suggest that Indiana has jurisdiction over Alma in this case. Specifically, she alleges that: (1) Alma markets, sells, and distributes its medical devices across Indiana to other Indiana physicians, dkt. 12 ¶ 5; dkt. 18-1 ¶ 8; (2) Alma recruited Watson to train other physicians both at her Carmel office and outside Indiana, dkt. 12 ¶ 5; dkt. 18-1 ¶¶ 3–4; (3) Alma has paid Watson in Indiana and knew she was an Indiana resident, dkt. 12 ¶ 6; dkt. 18-1 ¶¶ 2, 7; (4) Alma has "continuous and systematic business contacts in Indiana," dkt. 12 ¶ 9; (5) Alma recruited and contracted with Watson while she was a resident and citizen of Indiana, dkt. 12 ¶ 13; dkt. 18-1 ¶¶ 3–4; and (6) Alma sent medical equipment to Watson in Indiana, dkt. 18-1 ¶ 5.

As discussed above, Alma's general business contacts with Indiana are insufficient to establish general jurisdiction—it is not "at home" here. The contacts cited by Watson are also immaterial to the specific jurisdiction analysis at hand. The Court looks only at Alma's contacts to the extent that Watson's claims arise out of or relate to those contacts. *Ford Motor Co.*, 592 U.S. at 359. A defendant, like Alma, may indeed "reach[] out beyond its home" and "enter[] a contractual relationship centered there. *Yet, even then*—because the defendant is not 'at home' . . . there must be an affiliation between the forum and the underlying controversy." *Id.* (emphasis added) (cleaned up). Watson's claims arise out of the contract and indemnification agreement for the Arizona training. Alma's general business contacts with Indiana, or even Alma's separate dealings with Watson for her Indiana work, have nothing to do with the merits of her present claim. *Id.*; *RAR, Inc.*, 107 F.3d at 1278.

Watson identifies the Seventh Circuit's *Felland v. Clifton* opinion to support Indiana specific jurisdiction based on Alma's purposeful availment of the privilege of conducting business in Indiana. Dkt. 18 at 5 (quoting *Felland*, 682 F.3d at 674). But that reliance is misplaced. *Felland* is an intentional tort case triggering the "purposeful-direction" variety of purposeful availment. That test looks primarily to the defendant's "intentional conduct . . . expressly aimed at the forum state" knowing that the "plaintiff would be injured . . . in the forum state." *Felland*, 682 F.3d at 674–75 (citing *Calder v. Jones*, 465 U.S. 783, 785–86, and quoting *Tamburo*, 601 F.3d at 703). There, the Wisconsin plaintiffs alleged both fraud and breach of contract claims related to the Arizona

12

defendant's mailing of misleading letters to Wisconsin and asserted personal jurisdiction in Wisconsin over the non-resident defendant. 682 F.3d at 679. The Seventh Circuit expressly noted "the tort-vs.-contract distinction is highly significant to the personal-jurisdiction analysis." *Id.* at 674. The Seventh Circuit applied the purposeful-direction test to find the defendant expressly aimed his misrepresentations at Wisconsin when he mailed the misleading letters to the plaintiffs there, which supported personal jurisdiction in Wisconsin. *Id.* at 676.

Watson does not allege an intentional tort. So the fact that Alma intentionally aimed some of its commerce toward Indiana knowing it would engage in business with Indiana residents is jurisdictionally immaterial.[2] For breach of contract cases, *Felland*'s "purposeful-direction" analysis does not apply. In fact, the *Felland* opinion expressly notes that only the defendant's "conduct during contract formation" matters in breach of contract cases. *Id.* at 674 (citing *RAR*, 107 F.3d at 1278). As discussed above, Alma's case-linked conduct was directed toward its business in Arizona, not Indiana.

Watson makes a second argument: that Alma's communications with her "while she was in Indiana" establish specific jurisdiction. Dkt. 18 at 2. But the Seventh Circuit's discussion in *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 600 (7th Cir. 1979), forecloses this argument. In that case, the West Virginia-based defendant used mail and telephone to

---

[2] Watson does not attempt to argue that she was injured in Indiana. She appears to concede the injury occurred in Arizona. Dkt. 18 at 7 ("The relationship between Alma and Watson satisfies the jurisdictional requirement, no matter where the injury occurred . . . .").

negotiate and form a contract with a Wisconsin business for goods to be manufactured in and shipped from Wisconsin. *Id.* When the West Virginia buyer refused partial payment for the goods upon delivery in Virginia, the Wisconsin manufacturer sued in Wisconsin. *Id.* at 598. The court reasoned that the cause of action "ar[ose] in part at least from events that occurred in West Virginia and Virginia" as opposed to Wisconsin. *Id.* at 603. The court gave little weight to the defendant's "[u]se of the interstate telephone and mail service to communicate with a Wisconsin plaintiff . . . ." *Id.* at 604. Instead, the court focused on the dearth of other relationships between the West Virginia buyer and the state of Wisconsin, the failure of the defendant to ever set foot in Wisconsin, and especially "the unilateral activity of" the Wisconsin plaintiff. *Id.* at 600.

Likewise, Watson's allegations of Alma's communications with her "while she was in Indiana" reflect Watson's unilateral activity within the state and little more. The mere fact that Alma knew that Watson resided in Indiana and communicated with her there does not establish specific jurisdiction. *See also N. Grain Mktg.*, 743 F.3d at 495. Moreover, Watson's case is even weaker than *Lakeside Bridge*, where the plaintiff performed all the work in the forum state. The Seventh Circuit has criticized *Lakeside Bridge* for that reason. *N. Grain Mktg.*, 743 F.3d at 494 ("Much of the criticism is focused on *Lakeside*'s apparent disregard of the important fact that the plaintiff performed the contract in the forum state at the defendant's bidding, a relevant fact under subsequent Supreme Court precedent." (citing cases)). But that's not an issue here because Watson performed all of her relevant training for Alma in Arizona.

14

Watson has not made a prima facie case for specific jurisdiction over Alma in Indiana.

### IV. CONCLUSION

Applying Seventh Circuit precedent to the indemnity contract here shows that the Hoosier State lacks both general and specific jurisdiction over the defendant, Alma.  As this is Watson's second attempt to plead jurisdiction, this Court is left with nothing to do but dismiss the case.

Alma's motion to dismiss is **GRANTED.**    Dkt. [15].    This action is **DISMISSED without prejudice.**    Dkt. [12].    Final judgment will issue by separate order.

**SO ORDERED.**

Date: 4/17/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

Brandon Calderon
Troutman Pepper Locke
brandon.calderon@troutman.com

Paul L. Jefferson
SLS Group, LLC
pjefferson@slsgroup.law

Bilal Zaheer
Troutman Pepper Locke LLP
bilal.zaheer@troutman.com

15